UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL A. LOVE, JR., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT E. CARTER, et al., <br><br> Defendants. | CAUSE NO. 3:19-CV-163-JD-MGG |

OPINION AND ORDER

Michael A. Love., Jr., a prisoner without a lawyer, proceeds on an Eighth Amendment claim against Dr. Marthakis and Administrator Fritter for acting with deliberate indifference toward his medical needs by refusing to treat his facial injuries from a January 2019 assault and on a related claim for injunctive relief against Ron Neal in his official capacity as Warden of the Indiana State Prison to obtain the necessary medical treatment. ECF 5. He also proceeds on an Eighth Amendment claim against Commissioner Carter, Warden Neal, Grievance Specialist Wallen, Unit Team Manager Mays, and Officer Itodo for failing to protect him against an assault by other inmates that occurred in January 2019.

Dr. Marthakis and Administrator Fritter filed a motion for summary judgment. ECF 61. They provided Love with the summary judgment notices required by N.D. Ind. L.R. 56-1 and a copy of both Federal Rule of Civil Procedure 56 and Local Rule 56-1. ECF 63. The notice informed Love of the consequences of forgoing a response. It advised that, unless he disputed the facts presented by the defendants, the court could

accept those facts as true. *See* Fed. R. Civ. P. 56(e). It further advised that a lack of response could result in the dismissal of his case. *See* Fed. R. Civ. P. 56(a). Nevertheless, Love did not file a response.

## FACTS

On January 9, 2019, at the Indiana State Prison, an inmate attacked Love by stabbing him in the face, resulting in a puncture wound below the right eye and profuse bleeding. ECF 62-2 at 46-48. Dr. Marthakis assessed his injuries and transferred him to an emergency room at St. Anthony's Hospital. *Id.* There, Dr. Beal diagnosed him with facial laceration, right ear lobe laceration, and nasal fractures and sutured the lacerations. *Id.* at 56-74. On January 10, Dr. Marthakis noted that Dr. Beal had recommended a consultation with an otolaryngologist[1] and that he had taken a CT scan that she had not received. *Id.* at 43-45. She prescribed pain medication, antibiotics, and artificial tears and submitted a referral request. *Id.*

On January 14, Dr. Marthakis participated in a collegial discussion regarding Love's medical care. *Id.* at 3-4, 79. In accordance with that discussion, she ordered medical staff to obtain the CT scan records promptly and decided that she would wait until she received copies to submit another referral request for an otolaryngologist. *Id.* She believed that an otolaryngologist who did not have the CT scan records would similarly need to confirm the nasal fractures by seeking copies of the CT scan records or

---

[1] An otolaryngologist, also known as an ENT physician, specializes in treating the ears, nose, and throat. Columbia University Department of Otolaryngology, https://www.entcolumbia.org/about-us/what-otolaryngology (last visited Sept. 25, 2020).

2

by ordering another CT scan. *Id.* at 5. On January 16, a nurse removed sutures from Love's face on Dr. Marthakis' orders. *Id.* at 24. On January 17, Dr. Marthakis participated in a collegial discussion. *Id.* at 3. She had not received the CT records and decided to expedite the referral process by confirming the fracture herself. *Id.* On January 28, Dr. Marthakis confirmed the nasal fracture by physical examination and submitted another referral request. *Id.* at 3, 20-22. On February 14, Dr. Marthakis participated in a collegial discussion in which Love was approved for an outside consultation regarding the need for surgery. *Id.* at 3.

On March 7, Dr. Sabato examined Love at the South Bend Clinic and recommended a closed reduction of nasal fracture but noted that an open reduction could be necessary if the fracture had already healed. *Id.* at 8-10. On March 11, Dr. Marthakis' referral request for surgery for Love was approved. *Id.* at 78. Dr. Sabato's office initially scheduled the surgery for April but later rescheduled it for May 10. *Id.* at 79. On May 10, Dr. Sabato surgically repaired Love's nasal fractures. *Id.* at 4.

Administrator Fritter did not personally treat Love. ECF 62-3. She did not have the authority to order outside medical treatment and did not participate in scheduling Love's appointments with Dr. Sabato. *Id.* Dr. Marthakis also did not participate in scheduling Love's appointments with Dr. Sabato. ECF 62-2 at 5.

## STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## ANALYSIS

Love asserts an Eighth Amendment claim against Dr. Marthakis and Administrator Fritter for acting with deliberate indifference toward his medical needs by refusing to treat his facial injuries from the January 2019 assault. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

4

Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

5

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

At his deposition, Love elaborated that the focus of his medical claim is the delay in arranging surgery for him. ECF 62-4 at 6, 16-18. The record contains no evidence that Administrator Fritter was personally involved in treating Love or scheduling his outside medical appointments. It further contains no evidence that Dr. Marthakis was personally involved in scheduling his outside medical appointments or that she was responsible for any significant delay. At his deposition, Love also vaguely suggested that Dr. Marthakis should have done more to treat his nasal fracture, but there is no medical evidence in the record to support this allegation. Because the record contains no evidence to suggest that Dr. Marthakis and Administrator Fritter acted with deliberate indifference toward Love's facial injuries, the motion for summary judgment is granted with respect to the claim against them.

Additionally, Love asserts a claim for injunctive relief against Ron Neal in his official capacity as the Warden of the Indiana State Prison to obtain medical treatment

for his facial injuries as required by the Eighth Amendment. Love has since notified the court that he no longer resides at that facility due to his transfer to the Miami Correctional Facility. ECF 43. Therefore, the court finds that his claim for injunctive relief is moot. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

In conclusion, Love may proceed on his Eighth Amendment claim for money damages against Commissioner Carter, Warden Neal, Grievance Specialist Wallen, Unit Team Manager Mays, and Officer Itodo for failing to protect him against the January 2019 assault by other inmates, but no other claims remain.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 61);

(2) DISMISSES Dr. Marthakis and Administrator Fritter; and

(3) DISMISSES as MOOT the injunctive relief claim against Ron Neal in his official capacity as Warden of the Indiana State Prison.

SO ORDERED on September 28, 2020

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT